UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**CLINTON HARMON, et al.,**

   *Plaintiffs*,

v.   Case No. 5:21-CV-0724-JKP

**TOYO TIRE U.S.A. CORP.; et al.,**

   *Defendants*.

## MEMORANDUM OPINION AND ORDER

Before the Court are motions to dismiss (ECF Nos. 33 and 34) filed by two distinct groups of defendants. Movants are aptly described as (1) "Toyo," which encompasses Toyo Tire U.S.A. Corp.; Toyo Tire Holdings of Americas Inc.; and Nitto Tire U.S.A. Inc. and (2) "Bridgestone," which encompasses Bridgestone Americas Tire Operations, LLC ("BATO") and Bridgestone Americas, Inc. ("BSAM"). Toyo filed the first motion to dismiss, while Bridgestone filed the second motion. *See* ECF Nos. 33 and 34. Because the motions present nearly identical arguments, Plaintiffs filed a joint response. *See* ECF No. 38. Defendants[1] filed a joint reply. *See* ECF No. 40. Both motions are ripe for ruling. For the reasons that follow, the Court denies the motions.

## I. BACKGROUND[2]

Certain defendants removed this action from state court about a year ago. *See* Notice of Removal (ECF No. 1). Plaintiffs thereafter filed a First Amended Complaint ("FAC") (ECF No. 20) with leave of court. *See* ECF No. 19 (order granting opposed motion for leave to amend).

This action concerns events occurring on or about December 3, 2019, when Plaintiff

---

[1] Although there are other defendants in this action, the Court may refer to the two groups of movant defendants collectively as "Movants" or "Defendants" for purposes of this Memorandum Opinion and Order.

[2] The background is uncontested or taken from Plaintiffs' factual allegations, which the Court accepts as true consistent with the standard for motions to dismiss.

Clinton Harmon ("Harmon"), "an employee of Landstar, was hired and/or contracted to pick up a loaded trailer" at a Toyo facility in Roanoke, Texas. FAC ¶ 18. Prior to Harmon transporting the trailer, Toyo employees or agents loaded the trailer with tires. *Id*. ¶ 19. Harmon transported the trailer to an American Tire facility located on North Green Mountain Road in San Antonio, Texas. *Id*. ¶ 23. Upon arrival, Harmon was instructed to unload the trailer and when he opened the trailer doors, loaded tires "burst out of the doors onto him and crushed him under its weight, causing him serious, painful, and life-altering injuries." *Id*. ¶¶ 26-28.

Plaintiffs assert claims of (1) negligence (Claims 1 through 6, 22, and 23); (2) negligent hiring, training, and supervision (Claims 7 through 12, 24, and 25); (3) premises liability (Claims 13 through 18, 26, and 27); and (4) res ipsa loquitur (Claims 19 through 21, 28, and 29). *See id*. ¶¶ 31-211. They also assert a joint enterprise theory of liability. *See id*. ¶¶ 215-22. They bring suit against a number of defendants, including the two groups of movant defendants. Two other groups of defendants are also relevant: (1) ACTION, which comprises three specific entity defendants, and (2) American Tire, which also comprises three entity defendants.

Movants seek to dismiss the claims asserted against them on grounds that (1) they do not own or control the premises where the incident occurred and (2) they were not involved with the loading of the trailer. *See* ECF No. 33 at 1-2; ECF No. 34 at 1-2. Plaintiffs oppose the motions.

## II. APPLICABLE LAW

"Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *accord Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Because jurisdiction in this case is based on diversity of citizenship, the Court must "apply Texas law." *Ocwen Loan Servicing, LLC v. Berry*, 852 F.3d 469, 473 (5th Cir. 2017); *accord West v. Conrail*, 481 U.S. 35, 39 n.4 (1987); *Walker v. Armco Steel Corp.*, 446 U.S. 740, 752-53 (1980); *Hensgens v. Deere & Co.*, 869 F.2d 879, 880

(5th Cir. 1989).

"When reviewing issues of state law, federal courts look to the law of that state's highest court." *City of Alexandria v. Brown*, 740 F.3d 339, 351 (5th Cir. 2014); *accord Price v. City of San Antonio*, 431 F.3d 890, 892 (5th Cir. 2005). Absent a final decision by the Texas Supreme Court that "'precisely' resolves the legal issue, federal courts "must make an *Erie* guess and determine as best [they] can what the Supreme Court of Texas would decide." *Martinez v. Walgreen Co.*, 935 F.3d 396, 398 (5th Cir. 2019) (citation omitted). When compelled to make an *Erie* guess, federal courts "defer to intermediate state appellate court decisions, unless convinced by other persuasive data that the highest court of the state would decide otherwise." *Mem'l Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland, GMBH*, 524 F.3d 676, 678 (5th Cir. 2008) (citations and internal quotation marks omitted); *accord Price*, 431 F.3d at 893 n.5. The federal courts not only look to the intermediate state appellate decisions, but also to "the general rule on the issue, decisions from other jurisdictions, and general policy concerns." *Martinez*, 935 F.3d at 398 (citation omitted).

### III. APPLICABLE LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), litigants may move to dismiss asserted claims for "failure to state a claim for which relief can be granted." As required by Fed. R. Civ. P. 8(a)(2), every pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Such requirement provides opposing parties "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In general, a court addressing a motion under Rule 12(b)(6) "must limit itself to the contents of the pleadings, including attachments thereto." *Brand Coupon Network, LLC v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (citation omitted). And when a pleading refers to

3

documents that are central to a claim, the Court may consider such documents if attached to the motion to dismiss. *Lone Star Fund V (U.S.), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). "A document is central to a claim when it is 'necessary to establish an element' of the claim." *Pylant v. Cuba*, No. 3:14-CV-0745-P, 2015 WL 12753669, at *2 (N.D. Tex. Mar. 6, 2015) (quoting *Kaye v. Lone Star Fund V (U.S.), LP*, 453 B.R. 645, 662 (N.D. Tex. 2011)). However, "if the operative pleading references a document that 'is merely evidence of an element' of a claim, the courts do not incorporate it into the pleading." *Id*. (same).

Both groups of movant defendants attach two contracts, identified as Master Logistics Services Agreement ("MSA") and Independent Contractor Agreement for Specified Services ("ICA"), that they contend are central to Plaintiffs' premises liability claim because they specifically address an essential element as to whether either group of defendants owned, occupied, or controlled the premises at issue. *See* ECF No. 33 ¶¶ 6-7, 11-12; ECF No. 34 ¶¶ 6-7, 11-12; ECF No. 40 at 3 & n.1. "Such attachment prompts 'an obvious threshold question that often arises' in the context of a motion to dismiss, i.e., whether the attachment constitutes a matter 'outside the pleadings' for purposes of Fed. R. Civ. P. 12(d)." *O'Malley v. Brown Bros. Harriman & Co.*, No. SA-19-CV-0010-JKP, 2020 WL 1033658, at *3 (W.D. Tex. Mar. 3, 2020) (quoting *Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 785 (5th Cir. 2007)). Rule 12(d) provides:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

If the Court concludes that the attachment is a matter outside the pleadings and does not exclude it, Rule 12(d) mandates that the Court treat the motion to dismiss as one for summary judgment. But the decision to accept or reject a proffered matter outside the pleadings is within the court's

"complete discretion." *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193-94 & n.3 (5th Cir. 1988).

Defendants contend that the Court may properly consider the contracts because Plaintiffs have referenced them and made them the basis for their complaint even though Plaintiffs did not attach the contracts to their pleading. ECF No. 33 ¶¶ 11-12; ECF No. 34 ¶¶ 11-12; ECF No. 40 at 3 n.3. Plaintiffs concede to referring to a "third-party logistics services agreement . . . for certain logistics services . . . at the warehouse located [in Roanoke, Texas]," but denies specifically referring to the MSA or ICA relied upon by Defendants. *See* Resp. at 6 (quoting FAC ¶¶ 161, 168). Based on the FAC, that agreement was between Toyo Tire Holdings of America, Inc., and BATO. *See* FAC ¶¶ 161, 168. Through those same paragraphs, Plaintiffs also refer to agreements between (1) the Bridgestone Defendants and ACTION to render services and (2) the Toyo Defendants and American Tire Defendants. *See* FAC ¶¶ 161, 168.

Despite these unspecified references to contracts, Plaintiffs accurately contend that they do not specifically refer to either of the contracts presented by Movants. Resp. at 6. They submit that the ICA cannot be the relevant third-party logistical contract because it does not address operations at the injury site. *Id*. at 6. And, as for the MSA, they contend that Movants do not provide the entire agreement, including a specific amendment that defines the duties of defendants at the injury site. *Id*. They argue that their mention of contractual arrangements in two paragraphs of a 230-paragraph complaint is insufficient to qualify as a reference to either the MSA or ICA. *Id*. Further, to the extent the Court finds the reference sufficient, they argue that such reference does not make either contract central to their claims. *Id*. at 6-8. They urge the Court to not consider the partial contracts without converting the motions to dismiss to ones for summary judgment. *Id*. at 2.

Considering Plaintiffs' objection to using the incomplete contracts presented by Movants, the Court declines to consider them at this point. Given the arguments on both sides, it remains

5

unclear whether the attached contracts are necessary to establish an element of any claim. They appear more central to Movants' theory that they lacked control over the premises than to the claims asserted by Plaintiffs. To the extent they are relevant to this action, their consideration is better left for summary judgment.

When ruling on a motion to dismiss, courts "accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff." *White v. U.S. Corr., LLC*, 996 F.3d 302, 306-07 (5th Cir. 2021). But courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (citations and internal quotation marks omitted). And despite the natural focus on the allegations of the operative pleading, the party moving for dismissal under Rule 12(b)(6) has the burden to show that dismissal is warranted. *Cantu v. Guerra*, No. SA-20-CV-0746-JKP-HJB, 2021 WL 2636017, at *1 (W.D. Tex. June 25, 2021).

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted). Nevertheless, plaintiffs must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Plaintiffs need not plead the legal basis for a claim, but they "must plead facts sufficient to show that [the] claim has substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam). And they satisfy that standard when they allege "simply, concisely, and directly events" that are sufficient to inform the defendants of the "factual basis" of their claim. *Id.*

Facts alleged by the plaintiff must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

> To withstand a motion to dismiss under Rule 12(b)(6), a complaint must present enough facts to state a plausible claim to relief. A plaintiff need not provide exhaustive detail to avoid dismissal, but the pleaded facts must allow a reasonable inference that the plaintiff should prevail. Facts that only conceivably give rise to relief don't suffice. Thus, though we generally take as true what a complaint alleges, we do not credit a complaint's legal conclusions or threadbare recitals of the elements of a cause of action.

*Smith v. Heap*, 31 F. 4th 905, 910 (5th Cir. 2022) (quoting *Mandawala v. Ne. Baptist Hosp.*, 16 F.4th 1144, 1150 (5th Cir. 2021)). As *Twombly* states, to avoid dismissal under Rule 12(b)(6), plaintiffs must allege facts that "nudge" an asserted claim "across the line from conceivable to plausible." 550 U.S. at 570. The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted claims. *Id.* at 563 n.8.

## IV. PREMISES LIABILITY AND NEGLIGENCE

Movants argue that Plaintiffs have neither stated a claim of premises liability, ECF No. 33 ¶¶ 13-22; ECF No. 34 ¶¶ 13-23, nor one for general negligence, ECF No. 33 ¶¶ 23-27; ECF No. 34 ¶¶ 24-28. Plaintiffs disagree as to both claims. *See* Resp. at 8-13.

The Texas Supreme Court has distinguished between negligence and premises liability claims. *See Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016). It has "recognized that negligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury, while premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe." *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 388 (Tex. 2016) (quoting *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010)). In other words, the particular circumstances dictate whether "a person injured on another's property" has "a negligence or a premises liability claim against the property owner." *Occidental Chem.*, 478 S.W.3d at 644 (citing *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex.1992)). "Negligence and premises liability claims thus are separate and

7

distinct theories of recovery, requiring plaintiffs to prove different, albeit similar, elements to secure judgment in their favor." *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 471 (Tex. 2017). While "negligent activity and premises liability claims are branches of the same tree, they are conceptually distinct." *Austin v. Kroger Texas LP*, 746 F.3d 191, 196 (5th Cir. 2014), *certified question answered*, 465 S.W.3d 193 (Tex. 2015).

"When the injury is the result of a contemporaneous, negligent activity on the property, ordinary negligence principles apply." *Occidental Chem.*, 478 S.W.3d at 644. "Under Texas law, negligence consists of four essential elements: (1) a legal duty owed to the plaintiff by the defendant; (2) a breach of that duty; (3) an actual injury to the plaintiff; and (4) a showing that the breach was the proximate cause of the injury." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 314 (5th Cir. 2002) (quoting *Gutierrez v. Excel Corp.*, 106 F.3d 683, 687 (5th Cir. 1997)); *accord W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005) ("To prevail on her negligence cause of action, Urena must establish the existence of a duty, a breach of that duty, and damages proximately caused by the breach.")

But principles of premises liability apply "[w]hen the injury is the result of the property's condition rather than an activity." *Occidental Chem.*, 478 S.W.3d at 644 (citing *H.E. Butt Grocery Co. v. Warner*, 845 S.W.2d 258, 259 (Tex. 1992)). While "premises liability is itself a branch of negligence law, it is a 'special form' with different elements that define a property owner or occupant's duty with respect to those who enter the property." *Id.* (quoting *Urena*, 162 S.W.3d at 550).

"Duty is the threshold inquiry in a negligence case, including one of premises liability." *Gailey v. Mermaid Pools of El Paso, LLC*, 322 S.W.3d 346, 348 (Tex. App. – El Paso 2010, pet. denied) (citing *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *Almanza v. Navar*, 225 S.W.3d 14, 20 (Tex. App. – El Paso 2005, no pet.)). "Whether a duty exists is a question of law for the court and turns 'on a legal analysis balancing a number of factors, including the risk,

8

foreseeability, and likelihood of injury, and the consequences of placing the burden on the defendant.'" *Del Lago*, 307 S.W.3d at 767 (quoting *Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 217, 218 (Tex. 2008)). "In a premises liability case, the duty owed to the plaintiff depends on the status of the plaintiff at the time of the incident." *M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 675 (Tex. 2004); *accord Urena*, 162 S.W.3d at 550. "For most premises liability cases, the foreseeability analysis will be shaped by determining whether the plaintiff was an invitee, a licensee, or a trespasser." *Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 655 (Tex. 1999).

Plaintiffs allege that Harmon was an invitee. *See*, *e.g.*, FAC ¶¶ 103, 110, 117, 196. Further, as to Defendants, Harmon was an independent contractor, employed by Landstar to deliver a loaded trailer of tires to American Tire for a live unload by American Tire without any touching by Harmon. *Id.* ¶ 168.

As defined in the caselaw, moreover, Harmon would be an invitee to the extent he "enter[ed] the premises of another in answer to an express or implied invitation from the owner or occupier for their mutual benefit." *Almanza*, 225 S.W.3d at 21 (discussing differences between the three status types). Under principles of premises liability, "a property owner generally owes those invited onto the property a duty to make the premises safe or to warn of dangerous conditions as reasonably prudent under the circumstances." *Occidental Chem.*, 478 S.W.3d at 644 (citing *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex. 1983); *Smith v. Henger*, 148 Tex. 456, 226 S.W.2d 425, 431 (1950)). When the injured party is an invitee, there are four elements for a premises liability claim:

> (1) Actual or constructive knowledge of some condition on the premises by the owner/operator;
>
> (2) That the condition posed an unreasonable risk of harm;
>
> (3) That the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and

9

> (4) That the owner/operator's failure to use such care proximately caused the plaintiff's injuries.

*Keetch*, 845 S.W.2d at 264; *accord Henkel v. Norman*, 441 S.W.3d 249, 251 (Tex. 2014) (per curiam); *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 358 (5th Cir. 2017).

"The lines between negligent activity and premises liability are sometimes unclear, since 'almost every artificial condition can be said to have been created by an activity.'" *Del Lago*, 307 S.W.3d at 776 (quoting *Keetch*, 845 S.W.2d at 264). This lack of clarity makes it "tricky" to distinguish "between these two causes of action." *Austin*, 746 F.3d at 196. Indeed, courts may analyze the claims together due to their similarities. *See Urena*, 162 S.W.3d at 550. Although the claims "involve closely related but distinct duty analyses," *id*., the "independent theories of recovery . . . are not interchangeable," *Levine*, 537 S.W.3d at 471. But despite their distinctiveness, plaintiffs may pursue both claims in the alternative, *see Urena*, 162 S.W.3d at 550 (dismissing the alternate claims at summary judgment), and in some circumstances, they may even proceed to trial on the alternate theories, *see Del Lago*, 307 S.W.3d at 776 (suggesting that both claims could proceed to trial depending on the facts). Nevertheless, at some point, a plaintiff "cannot pursue both a negligent activity and a premises defect theory of recovery based on the same injury." *Austin*, 746 F.3d at 197 (making statement while affirming summary judgment ruling that the plaintiff's injuries were "properly conceived as resulting from a condition on the premises rather than an ongoing activity").

Pursuant to Fed. R. Civ. P. 12(b)(6), Movants seek dismissal of the asserted premises liability claim on two grounds: (1) the trailer does not constitute a premises as a matter of law and (2) they owe no duty to Plaintiffs with respect to property they neither own nor control. ECF No. 33 ¶ 14; ECF No. 34 ¶ 14. As to the general negligence claim, Movants seek dismissal for lack of any duty owed and for lack of any contemporaneous conduct. *See* ECF No. 33 ¶¶ 23-27; ECF No. 34 ¶¶ 24-28.

As the threshold issue for all negligence cases, duty includes various components, including whether the injury occurred on "premises" over which a given defendant has control or whether the injury instead relates to personal property. In this case, Harmon transported a loaded trailer from one location to another and when he opened the trailer's doors to unload, previously loaded tires fell upon and injured him. When "determining if premises liability attaches to claims involving movable property, courts mainly focus on whether the property was affixed or connected to the real property." *AAA Cooper Transp. v. Davis*, No. 05-18-00541-CV, 2019 WL 3928754, at *4 (Tex. App. – Dallas Aug. 20, 2019, no pet. hist.). Although Plaintiffs allege that the trailer is part of the relevant premises in this case, they do not specify the basis for considering it as so. The operative pleading contains no allegations to that effect.

In response to the motions, Plaintiffs base their premises liability claim upon the dangerous condition posed by an item of tangible personal property, i.e., the tires loaded in the trailer. *See* Resp. at 8-9. As Plaintiffs contend, "it was the improper placement of the tires in the trailer that created a shifting and falling hazard – a dangerous condition on the premises, resulting in a premises defect claim." *Id*. at 9. But they also continue to contend "that the unsafe premises included the trailer itself." *Id*. at 10.

Under Texas law, "the dangerous condition upon which a premises defect claim is based may be created by an item of tangible personal property." *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 388 (Tex. 2016). The important "distinction lies in whether it is the actual use or condition of the tangible personal property itself that allegedly caused the injury, or whether it is a condition of real property—created by an item of tangible personal property—that allegedly caused the injury." *Id*. In clarifying this distinction, the Texas Supreme Court held that the determination as to

> whether a claim arises from a use or condition of tangible personal property or a premises defect . . . turns on whether the contemporaneous "action or service" (use)

11

> or "state of being" (condition) of the tangible personal property itself caused the injury, or whether the tangible personal property created the dangerous real-property condition, making it a premises defect.

*Id*. at 389. Stated simply, "an item of tangible personal property may create a condition of the premises, resulting in a premises defect claim." *Id*.

Plaintiffs make extensive allegations regarding negligence and premises liability against both Movants. *See* FAC ¶¶ 31-51 (Claims 1-3, negligence against entities that comprise Toyo); ¶¶ 100-20 (Claims 13-15, premises liability against Toyo entities); ¶¶ 167-73 (Claim 23, negligence against Bridgestone); ¶¶ 193-99 (Claim 27, premises liability versus Bridgestone). They have specifically alleged that Toyo employees loaded the tires and had a duty to load and secure the tires in a manner that prevented them from shifting and injuring someone when the trailer doors were opened. *See id.* ¶¶ 19-20. They further allege that, through various agreements, the Bridgestone defendants were ultimately the shipper of tires and responsible for their loading and unloading. *See id*. 168-69. They have alleged numerous alleged failures of the Movants. *See*, *e.g.*, *id*. ¶¶ 34, 170. As to both groups of Movants, they have made specific allegations with respect to premises liability. *See*, *e.g.*, *id*. ¶¶ 103-06, 193-99. They allege that Movants have control over both the shipping premises at Roanoke and the receiving premises in San Antonio, including the trailer. *Id*. ¶¶ 101, 194-95. And through alleged contractual agreements between various defendants, Plaintiffs also allege that the Toyo Defendants and American Tires contractually agreed to the delivery of a preloaded trailer of tires and that both sets of entities "were specifically assigned a right to control." *Id*. ¶¶ 102, 109, 116, 123. Plaintiffs allege that control by Bridgestone extended from the shipping premises to the receiving premises, including the trailer. *Id*. ¶¶ 194-95.

Plaintiff has made sufficient allegations that Movants controlled the relevant premises. Control extends beyond mere ownership or physical occupation of property. *See Levine*, 537 S.W.3d at 473-74. Requisite control may exist when a party "assume[s] control over and responsi-

bility for the premises" or "has a right to control the premises, which may be expressed by contract or implied by conduct." *Id*. (citations and internal quotation marks omitted). Consequently, "physical possession does not equate to the right to control the premises; one can exist without the other." *Id*. at 474. Plaintiffs' allegations are broad enough to encompass both the shipping and receiving premises, and to the trailer itself to the extent the trailer qualifies as premises.

Movants challenge that the trailer qualifies as premises within the meaning of premises liability law. *See* ECF No. 33 at 7-9; ECF No. 34 at 7-9. In doing so, they rely on a decision from the Court of Appeals in Dallas, which affirmed a judgment awarding damages to a warehouseman following a jury trial. *See* ECF No. 33 at 7-8 (relying on *AAA Cooper Transp. v. Davis*, No. 05-18-00541-CV, 2019 WL 3928754 (Tex. App. – Dallas Aug. 20, 2019, no pet. hist.)); ECF No. 34 at 7-8 (same). In *AAA*, a warehouseman for one entity "was assigned to load pallets into a trailer that had been leased by AAA Cooper" from a third entity and was injured while doing so. *AAA*, 2019 WL 3928754, at *1. The warehouseman brought suit against AAA and the leasing entity "alleging they had provided an unsafe trailer and were negligent in their failure to properly inspect, repair, and maintain the trailer." *Id*. at *2.

Based on facts developed at trial, the court of appeals disagreed with AAA that the trial court should have submitted a premises liability instruction to the jury instead of "submitting the case to the jury using a general negligence question." *Id.* at *3-5. On fully developed facts, the court of appeals found that the trailer at issue in the case before it did not qualify as premises as a matter of law. *See id*. Of course, the case before this Court has not yet proceeded to trial. At this point, this Court is not presented with the fully developed facts. Rather than considering the facts presented at a jury trial, this Court is considering the allegations of Plaintiffs' First Amended Complaint. The review is deferential to the pleading party. And, under that deferential review of the factual allegations, the Court declines to find that the trailer in question cannot qualify as premises

as a matter of law at this juncture.

Plaintiffs sue various entities, including entities owning or controlling the shipping and receiving premises. They allege that the premises for this case include the trailer. Because this case lacks any allegation that the trailer was intended to be permanently affixed or connected to any real property, there is a basis to conclude that the trailer is merely personal property as a matter of law. *See id*. at *4. But *AAA* found *Levine*, a Texas Supreme Court case, inapposite because the case "only discussed the issue of control." *Id*. One could argue, however, that *Levine* had no reason to discuss control due to an implicit recognition that, in some circumstances, temporarily affixed personal property may qualify as an extension to the relevant premises.

This Court first looks to the Supreme Court of Texas when reviewing issues of Texas law. *See City of Alexandria v. Brown*, 740 F.3d 339, 351 (5th Cir. 2014). Although *Levine* does not precisely resolve whether a trailer may qualify as premises, it provides a basis for an *Erie* guess that it could find that a trailer qualifies as an extension of the premises in some circumstances. But when making an *Erie* guess, the federal courts must determine "what the Supreme Court of Texas would decide." *Martinez v. Walgreen Co.*, 935 F.3d 396, 398 (5th Cir. 2019). The courts must be more definitive than what the state Supreme Court could decide. Such precision and definitiveness cut against making *Erie* guesses at the motion to dismiss stage to foreclose an asserted claim as a matter of law. And it is Movants' burden on their motions to dismiss to show that dismissal is warranted on an asserted legal basis.

The Court declines to make an *Erie* guess at this point as to whether the Supreme Court of Texas would extend premises liability to a trailer under the facts alleged here. It further declines to extend *AAA* to make a legal determination on a motion to dismiss with differing factual allegations. The appellate court distinguished several cases on the basis of undisputed trial evidence and facts. *See* 2019 WL 3928754, at *3-5. One distinguishing characteristic was that, in *AAA*, it was

14

"undisputed that neither appellant owned or controlled the real property on which the trailer was parked." *See id*. *5. As discussed above, Plaintiffs here have made sufficient allegations of control. And, in *Levine*, control was sufficient to proceed with a premises liability claim. *Levine*, 537 S.W.3d at 473-74. At this point, the Court will not accord *AAA* the dispositive effect urged by Movants.

Because Plaintiffs have stated a plausible basis to find that Movants had a duty to Harmon given their control of the relevant premises and because the Court declines to find, as a matter of law at this juncture, that the trailer does not qualify as premises, the Court denies the motions to dismiss the asserted premises liability claims against Movants.

Although the duty analysis applies equally to the claim of general negligence, Movants also seek dismissal of such claim due to the absence of any contemporaneous negligent conduct. While Plaintiffs certainly allege that the tires were loaded negligently at the Roanoke facility, their allegations of negligence go far beyond what occurred at that facility. They have stated a plausible claim of general negligence based on negligent conduct that occurred contemporaneously with the improperly loaded tires falling on Harmon and injuring him when he opened the trailer doors at the direction of employees at the receiving facility.

For instance, Plaintiffs allege that Movants were negligent in failing to warn Harmon "of the dangerous condition inside the trailer" and to adequately inspect "the premises, including the trailer, to make timely discovery of dangerous conditions." *See* FAC ¶¶ 33(o) and (p) (Claim 1 versus first Toyo entity); 41(o) and (p) (Claim 2 versus second Toyo entity); 48(o) and (p) (Claim 3 versus third Toyo entity); 170(o) and (p) (Claim 23 versus Bridgestone). Plaintiffs make similar allegations as to their premises liability claim. *See id*. ¶¶ 105(b) (Claim 13 versus first Toyo entity); 112(b) (Claim 14 versus second Toyo entity); 119(b) (Claim 15 versus third Toyo entity); 191(b) (Claim 27 versus Bridgestone).

Standing alone, the negligent failure to warn or inspect may involve nonfeasance pursued through a premises liability claim. But Plaintiffs here also allege that Harmon opened the trailer doors at the express direction of employees at the receiving facility. This affirmative act in conjunction with the failures to warn and inspect is enough to state a plausible general negligence claim. To the extent the trailer may not qualify as premises, it could qualify as personal property that Harmon used at the negligent direction of others without adequate warning or inspection. Such an alleged direction to open is an active act of malfeasance. While the tires may also qualify as personal property that created a dangerous condition on the premises, there may be a question as to whether use of the tires caused Harmon's injuries. The Court need not answer that question at this point, because Harmon did use the trailer by opening it without adequate warning or inspection by others. For these reasons, the Court denies the motions to dismiss the general negligence claims asserted against Movants.

## V. NEGLIGENT HIRING, TRAINING, SUPERVISION

Movants next argue that Plaintiffs have failed to state a claim for negligent hiring, training, and supervision. ECF No. 33 ¶¶ 28-30; ECF No. 34 ¶¶ 29-31. The gist of the argument is that Movants were not responsible for loading the trailer as shown by a contract attached to their motions to dismiss. The Court, however, has declined to consider the attached contract. Consequently, the contract provides no basis to dismiss any claim. Plaintiffs, moreover, have alleged that Movants were responsible for loading the trailer. The Court denies this aspect of the motions to dismiss.

## VI. RES IPSA LOQUITOR

Although Movants do not address res ipsa loquitor in a separate section of their motions, they do challenge all claims on grounds of control and loading involvement. As already found, Plaintiffs have made sufficient allegations of control and loading involvement to survive the motions to dismiss.

In their reply brief, Movants assert another basis for dismissing the claims of res ipsa loquitor. *See* ECF No. 40 at 9-10. The Court, however, will not consider the new argument raised for the first time in the reply brief. *See RedHawk Holdings Corp. v. Schreiber Tr. of Schreiber Living Tr. - DTD 2/8/95*, 836 F. App'x 232, 235 (5th Cir. 2020) (per curiam) ("Generally, neither this court nor the district courts of this circuit will "review arguments raised for the first time in [a] reply brief.").

## VII. JOINT ENTERPRISE

Movants also argue that Plaintiffs fail to state a joint enterprise claim. ECF No. 33 ¶¶ 31-33; ECF No. 34 ¶¶ 32-34. To the extent Movants base their argument on any contract attached to their motions to dismiss, the Court denies the motions for the reasons stated above. Although Movants purport to argue that the First Amended Complaint is devoid of facts to support the elements of a joint enterprise, this argument is ultimately based on an attached contract that disproves certain allegations. ECF No. 33 ¶ 33; ECF No. 34 ¶ 34.

"Joint enterprise liability makes 'each party thereto the agent of the other and thereby to hold each responsible for the negligent act of the other.'" *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 613 (Tex. 2000) (quoting *Shoemaker v. Estate of Whistler*, 513 S.W.2d 10, 14 (Tex. 1974)). There are four essential elements to joint enterprise liability under Texas law:

> (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control.

*Id*. (quoting Restatement (Second) Of Torts § 491 cmt. c (1965)).

Although Plaintiffs identify "Joint Enterprise" as a claim, *see* FAC at 80, " a joint enterprise is a term which describes a relationship between parties, and gives rise to a theory of liability." *Ergonomic Lighting Sys., Inc. v. Com. Petroleum Equip./USALCO*, No. SA-02-CA-0031 RF(NN), 2003 WL 22436101, at *5 (W.D. Tex. Oct. 21, 2003) (recommendation of Mag. J.) *adopted by*

unpub. order (W.D. Tex. Feb. 26, 2004). Such theory of liability is not subject to dismissal under Fed. R. Civ. P. 12(b)(6) because "a joint enterprise is not a claim." *Id*.

## VIII. CONCLUSION

For the foregoing reasons the Court **DENIES** the two motions to dismiss (ECF Nos. 33 and 34) currently before the Court.

**IT IS SO ORDERED this 20th day of July 2022.**

*[Signature: Jason Pulliam]*
**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**